

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable C. F. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. 0-5250-A

Re: Request for reconsideration or amplification of Opinion No. 0-5250, relative to violation of Article 4727, Vernon's Annotated Civil Statutes, or Article 577, Vernon's Annotated Penal Code, in the purchase of certain real estate from the Texas Discount Company by the City National Life Insurance Company, Dallas, Texas.

Your request for a reconsideration and amplification of our Opinion No. 0-5250 has been received and carefully considered. We quote from said request as follows:

"...

"It is our view from a careful reading of Article 4727 and the fact that an article of this kind is placed in the civil statutes covering the operation of legal reserve life insurance companies that the article is designed to prevent officers and directors of an insurance company from being personally interested in investment of the company's assets. In other words, we believe that the article intends that an officer or director of an insurance company shall be entirely divorced from the investment of the company's assets so far as he is personally concerned. In the same way, since this article is found in the civil statutes on insurance companies, we think it is at least

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable O. P. Lockhart, Chairman

implied that insurance companies will not be concerned in transactions of this kind.

"We have read with interest your clear statement of how transactions involving officers and directors of corporations are treated generally by the laws of this state, but may we suggest that the particular article in which we are interested, Article 4727, refers to officers and directors of insurance companies specifically and we think it has a stricter application than is generally the case because the funds of insurance companies are largely trust funds. It is reasonable to conclude that the investment of such trust funds should be made by impartial officers and directors of the company in charge of the funds.

"In the instant case, the majority stock in the insurance company is owned by a corporation, the Texas Discount Company, and the same corporation is owned almost entirely by the president of the insurance company. The building which is proposed to be sold to the insurance company is owned by the Texas Discount Company. It seems that in this transaction the Texas Discount Company and the president of the insurance company are for all practical purposes one and the same. In other words, in applying Article 4727 to the sale by the Texas Discount Company of a building to the life insurance company, the president of the life insurance company is manifestly interested in the transaction. Can he be divorced from the transaction when he owns almost the entire stock of the Texas Discount Company? If this reasoning is not correct, then an officer of an insurance company, who had property he wanted to sell to the insurance company, could simply form a corporation to own the property and then let the corporation sell it to the insurance company.

"Referring specifically to your opinion, page 6, second paragraph, it is stated that Article 4727 does not prohibit a transaction of this kind if the director or officer 'has no personal interest in

such transaction'. We shall appreciate an amplification of this paragraph. In other words, is it your opinion that a transaction of the kind described is forbidden where the officer or director does have a personal interest in the transaction?

"A related question on which we desire your opinion is: what is the position of an insurance company in a transaction which is barred by the provisions of Article 4727? In other words, if the directors of an insurance company authorize the purchase of property from one of the officers or directors, in violation of Article 4727, is the investment an illegal one from the standpoint of the insurance company? It has been our view that in such a transaction the insurance company through its officers or directors is at least participating in an illegal transaction and, following established examination practices, we have non-admitted as an asset an investment of this kind. The fact that Article 4727 is found in the civil statutes has been construed by us as prohibiting insurance companies from being parties to such transactions and, therefore, that investments of this type will not be recognized."

We understand from the above quoted part of your request that it is your contention that, because the majority of the stock of the City National Life Insurance Company is owned by the Texas Discount Company, the stock of which is owned almost entirely by its president who is also president of the City National Life Insurance Company, said president would be interested in the purchase of a building from the Texas Discount Company by the City National Life Insurance Company within the provisions of said Articles 4727 and 577, and that, therefore, such insurance company is prohibited from making such purchase by said Articles 4727 and 577. We do not so construe said Articles of the statutes and are of the opinion that the rules of law set forth in our original Opinion No. O-5250, and the opinions therein referred to, cover this situation.

The transaction under consideration is between two corporations, each of which is a distinct legal entity separate

and apart from its stockholders, and the general character-
istics of each as a distinct legal entity, regardless of how
and by whom its stock is held, must be recognized under the
laws of Texas, unless such entity should be disregarded under
other rules of law hereinafter referred to. H. E. Butt Gro-
cery Co. et al. v. Sheppard et al., 137 S. W. (2) 823. Arti-
cles 4727 and 577 do not apply to corporations as such, but
only to a director or officer of an insurance company who re-
ceives any money or valuable thing for negotiating, procuring,
recommending or aiding in the purchase by such company of any
property, or who is pecuniarily interested as principal, co-
principal, agent or beneficiary in such purchase. The penalty
for a violation of such statutes is not placed upon said in-
surance corporation, but only upon such director or officer,
therefore, said statutes could not have any application to
the matter here under consideration. The fact that a director
or officer of an insurance company owns stock in another cor-
poration from which said insurance company is making a purchase
of property would not, of itself, affect such purchase, in
fact, even if said director or officer should receive money,
or other valuable thing, for negotiating said purchase, same
would not be affected thereby, unless there was unfairness or
fraud therein, and this would be governed by other rules of
law, instead of the provisions of said Articles 4727 and 577.
Said statutes visit a penalty only upon the director or offi-
cer violating same, and the legality of the transaction, in-
sofar as the insurance company is concerned, is determined by
other well-known rules of law. The facts here under considera-
tion do not show that the president of the City National Life
Insurance Company is to receive any money or valuable thing
for negotiating, procuring, recommending or aiding in the
purchase of said building from the Texas Discount Company,
or that he is pecuniarily interested as principal, co-principal,
agent or beneficiary in such purchase, in fact it is not shown
that any of the provisions of said Articles 4727 and 577 can
be applied to him, or to this transaction, the only thing con-
necting him therewith being his said ownership of stock in
the Texas Discount Company and being president of both of
said companies. The only way he could be pecuniarily inter-
ested in such purchase would be through the ownership of such
stock in the Texas Discount Company, but said statutes do not
forbid such sale on the grounds that a director or officer
of the insurance company owns stock, or is a director or of-
ficer, in the company from which said purchase is made, in

fact said statutes do not affect such purchase at all and only penalize a director or officer who violates the provisions thereof. There is no law that forbids such purchase, and the only thing that could be said in regard thereto is that, since the president of the Texas Discount Company is also the president of the City National Life Insurance Company and owns a majority of the stock of the Texas Discount Company which owns a majority of the stock of the City National Life Insurance Company, such purchase is subject to close scrutiny when questioned at the proper time and could be set aside upon the appearance of unfairness or fraud.

There is nothing in Article 4727 that prohibits an insurance company from making a purchase of a building under the circumstances here being considered, and there is nothing in said Article that makes such a purchase illegal and, in making such purchase, such company would not be participating in an illegal transaction.

The most that can be said in regard to such transaction is that, if a director or officer of an insurance company violates the provisions of said Article, he can be prosecuted therefor and made to pay a fine under Article 577 of the Penal Code. This, however, could not in any way affect the legality of the transaction by which such purchase was made, as said articles of the statutes do not place any greater duties or responsibilities upon directors and officers of insurance companies than are placed upon directors and officers of other corporations. All said articles do is to specify certain things that directors or officers of insurance companies shall not do and penalize them for violations thereof, but the validity of such acts, insofar as they affect the corporations involved, must still be determined by the fairness or unfairness of the particular transaction.

It is the rule that the legal fiction of corporate entity may be disregarded where the fiction is used as a means of perpetrating fraud, or is relied upon to justify wrong. But this rule is an exception to the general rule which forbids

disregarding corporate existence or entity and is not to be applied unless it is made to appear that there is such unity that the separateness of the corporation has ceased and "the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice". First National Bank in Canyon et al. v. Gamble, 132 S. W. (2) 100, Commission of Appeals; Pacific American Gasoline Company of Texas et al. v. Miller et al., 76 S. W. (2) 833, writ refused; Continental Supply Company et al. v. Forrest E. Gilmore of Texas et al., 55 S. W. (2) 622, writ dismissed. The rule that the legal fiction of corporate entity may be disregarded is also applicable where (1) a corporation is organized and operated as a mere tool or business conduit of another corporation; (2) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (3) where the corporate fiction is employed to achieve or perpetrate monopoly; and (4) where the corporate fiction is used to circumvent a statute.

The authorities generally are in complete accord in declaring that a contract between a corporation and one or all of its officers and directors is not void per se, but that it may be avoided for unfairness or fraud. Zorn v. Brooks et al., 83 S. W. (2) 949, Commission of Appeals.

It has been held that where a corporation is in effect the alter ego of an individual who was its president and was merely the vehicle by which he carried on his personal and individual business, our courts will, in order to prevent injustice, look through the mere corporate form of things to the reality and adjudicate the liability of the parties according to the actual facts. Merrell et ux v. Timmons et al., 140 S. W. (2) 480, affirmed by the Supreme Court, 158 S. W. (2) 278.

The general rule is that, where a corporation owns all of the stock of another corporation, and uses the latter as a "mere agency" or "mere instrumentality" for perpetrating fraud, or for the purpose of evading the law, the corporate fiction will be disregarded to prevent the attainment of either objective. Hamblen v. Horwitz-Texan Theaters Company, Inc., 162 S. W. (2) 454.

Honorable O. P. Lockhart, Chairman, Page 7

Where a corporation is organized and controlled and its affairs are conducted so as to make it merely an instrumentality of the sole owner of such corporation, by which such owner conducts a fraudulent scheme or promotional venture, the corporate fiction of such corporation may be disregarded to circumvent fraud. Irish v. Bahner et al., 109 S. W. (2) 1023.

The fiction of corporate entity will be disregarded if it be shown that the corporation was virtually owned and controlled by one person and was employed by him as an instrument in the course of the perpetration of the fraud. Bush et ux v. Gaffney, 84 S. W. (2) 759.

But none of these rules of law are applicable to the situation here under consideration, for the reason that Articles 4727 and 577 apply only to an individual director or officer of an insurance company, and not to the insurance company itself, and there are no facts which show that the president of the Texas Discount Company and the City National Life Insurance Company is subject to the rules of law above laid down whereby the legal fiction of corporate entity may be disregarded, in fact the facts herein are such that the situation must be dealt with as a transaction between two corporations, and not otherwise.

The rules of law that do have an application to this question are laid down in the case of City National Bank of Texarkana v. Merchants and Planters National Bank of Mt. Vernon, 105 S. W. 338, referred to and quoted from in our original opinion No. O-5250, but we will not quote that part of said opinion quoted by us in our said original opinion as said opinion is hereby in all things approved. This opinion involved an action by the Merchants and Planters National Bank of Mt. Vernon against the City National Bank of Texarkana to recover interest on money deposited with the defendant. One T. H. Leeves was a stockholder in the Texarkana bank, a member of its board of directors and its president. He was also a stockholder in the Mt. Vernon bank and one of its vice presidents and a member of its board of directors. Plaintiff recovered judgment for the full amount sued for. The appeal was based on two propositions, stated as follows:

"First. Public policy will not permit officers of a corporation to contract for said corporation in matters in which they are personally interested.

"Second. Where it is shown that a contract
is made by officers of a corporation, some of
whom are interested in the contract adversely
to the stockholders, and some are not, the con-
tract will be held void, or at least voidable,
at the election of the corporation, unless it
be shown that it was concurred in by a majority
of the disinterested directors."

The defense was based exclusively upon the theory that the
contract sued on was void, or at least voidable, at the elec-
tion of the defendant, and that this vice in the contract
was due to the participation of Leeves in its making, who
was at the time financially interested in the plaintiff bank,
and was undertaking at the same time, as one of the officers
of the defendant, to bind it in a contract to pay the former
interest on its daily balances for money deposited. In pass-
ing upon whether or not such contract was voidable, the court
made the following holding:

". . . There is still another class which is
treated as voidable, not at the mere option of one
or the other of the parties, but upon the proof
of fraud or unfairness. It is said that courts
will closely scrutinize such contracts, and, upon
the discovery of the slightest appearance of fraud
or unfairness, will set them aside. The most fre-
quent transactions which fall within this class are
those where an officer, or one of the directors of
a corporation enters into a contract with the cor-
poration for his own benefit, or where two corpora-
tions having the same or a majority of the directors,
or controlling officers in common, deal with each
other through such directors, or managing officers.
To this group or class we think the transaction here
under consideration is more nearly referable. If
there is any element lacking to clearly place it
within this group, it arises from the fact that
Barrier alone had authority to make this contract,
independent of Leeves, and that Leeves is not shown
to have made any pretense of acting for the appel-
lee in the negotiations, but confined his partici-
pation in the proceedings solely to making the
offer of the payment of 2 per cent. upon daily
balances in behalf of the appellant. The absence

of this element takes from, rather than adds to, the circumstances that call for the watchful scrutiny of the courts over such transactions, and tend to make it a voidable agreement. If Leeves, as the contracting officer for appellant, had made a contract between himself and the appellant whereby he was to receive 2 per cent. upon deposits made by himself, it would have presented a transaction quite different from the one now under consideration. Here we have two corporations, each distinct legal entities; each capable of making contracts and of suing and being sued thereon in its own name. The contract was probably for their mutual benefit—the record indicates nothing to the contrary. They had only one officer in common, Leeves. It is conceded that his concurrence was not even necessary to the authoritative consummation of the contract; that Barrier, the appellant's cashier, had full authority, by virtue of his office, to make this identical contract alone; and it is further shown beyond controversy that he was, at least, an equal factor with Leeves in the consummation of the trade. That this contract was not void absolutely we think is perfectly clear. It was not in violation of any provisions, either of statute or of common law. It was such a contract as the appellant and the appellee had a perfect right to enter into through their managing officers in whom such authority was confided, and therefore did not violate any rule of public policy. Did Leeves' mere participation in it make it vicious? We think not. It frequently occurs in this country that two or more corporations have the same directors and managing officers in common. Are they for that reason to be deprived of the privilege of making advantageous agreements between themselves? Such a rule would seriously interfere with another well-established policy of the law—to allow freedom of commerce and trade. So highly is this freedom prized that it is contrary to public policy to make contracts in restraint of trade. Would it, then, be consistent for courts to impose such restrictions by refusing to enforce contracts between corporations, unless it be shown, upon inquiry, that a wrong would be perpetrated in giving the requested

relief? We think relief should not be withheld in
cases like the one under consideration, unless it
be shown that a trust relation has been violated
in the making of the contract, and that fraud, or
at least unfairness, has been practiced toward the
party sought to be bound thereby.

"...."

It is the opinion of this department, therefore,
that the purchase of said real estate from the Texas Dis-
count Company by the City National Life Insurance Company
under the facts stated would not come within the provisions
of Articles 4727 or 577, and that such transaction would be
in all things legal.

Trusting that this satisfactorily answers your in-
quiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*
Jas. W. Bassett
Assistant

APPROVED JUN 3, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

JWB:mp



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN